CARL R. BAUER *v.* MALCOLM C. POUNDS ET AL.
(AC 19136)

Lavery, C. J., and Schaller and Healey, Js.

Argued September 18—officially released December 5, 2000

*John J. LaCava*, for the appellant (plaintiff).

*John A. Blazi*, for the appellees (defendant H.N.S. Management Company, Inc., et al.).

*Opinion*

HEALEY, J. The plaintiff, Carl R. Bauer, cross appeals from the judgment of the trial court granting the motion to set aside the jury's verdict filed by the defendant H.N.S. Management Company, Inc. (H.N.S.), doing business as Connecticut Transit, in this personal injury action.[1] The plaintiff claims that the court improperly

[1] The jury returned a verdict in favor of the plaintiff and apportioned the liability among the defendants, H.N.S., Fairfield Home Oil Corporation, Malcolm C. Pounds and an unidentified defendant, John Doe. Although the defendants Fairfield Home Oil Corporation and Pounds initially appealed from the judgment against them, they subsequently withdrew their appeal and have paid their apportioned share of the jury's award of damages. Neither Fairfield Home Oil Corporation nor Pounds are parties to this appeal. We refer in this opinion to H.N.S. and Doe as the defendants.

granted the motion because (1) it was based on factual and legal grounds different from those set forth in a previous motion H.N.S. had filed seeking a directed verdict, which was denied after the close of the plaintiff's case-in-chief, (2) it incorporated facts that were not presented at trial, (3) there was sufficient evidence from which the jury reasonably could infer that H.N.S. owned the bus involved in the motor vehicle accident at issue and (4) at the relevant time, the defendant John Doe was driving the bus in the usual course of the business of H.N.S. and was one of its agents or employees. We reverse in part the judgment of the trial court.

The following procedural history is relevant to this appeal. The plaintiff brought an action for negligence seeking to recover damages for personal injuries arising out of a motor vehicle accident that occurred on October 20, 1992, on High Ridge Road in Stamford. The plaintiff named four defendants: Fairfield Home Oil Corporation, Malcolm C. Pounds, H.N.S. and Doe. The plaintiff alleged that a city transit bus and an oil truck were negligently operated, thereby causing the accident and his injuries. The plaintiff alleged that the oil truck was owned by Fairfield Home Oil Corporation and operated by Pounds. The plaintiff alleged that the bus was "owned and/or operated by the defendant Connecticut Transit and driven by an unknown driver, John Doe,[2] one of its agents and employees. . . ."

The case was tried to a jury. At the close of the plaintiff's case-in-chief, H.N.S. made a motion for a directed verdict "because there [was] no evidence to support the allegation that the bus was in fact owned by Connecticut Transit." The court denied the motion.

The jury returned a plaintiff's verdict in the amount of $100,300 against all of the defendants. The jury found

---

[2] The actual name of the driver is not disclosed in the evidence because the bus proceeded from the scene of the accident without stopping.

that the plaintiff's comparative negligence was not greater than that of the defendants, and the jury apportioned the negligence as follows: 15 percent as against " 'John Doe' H.N.S. Management," 47 percent as against "Malcolm C. Pounds Fairfield Home Oil" and 38 percent as against the plaintiff.[3]

Thereafter, H.N.S. filed a motion to set aside the verdict[4] on the ground that "there was no proof offered at the trial that the defendant, H.N.S. Management, Inc., owned the bus that was allegedly involved in the accident involving the plaintiff." The court granted the motion, ruling that "[i]t was incumbent upon the plaintiff to establish by some credible evidence that the bus

---

[3] Interrogatory number six submitted to and answered by the jury stated the following: "6. Did the negligence of more than one party combine to cause the accident?" The jurors responded, "Yes," to that question. The interrogatory continued: "If the negligence of more than one party combined to cause the accident, please attribute the percentage of negligence to each party that combined to cause the accident.*

" 'JOHN DOE'
"H.N.S. MANAGEMENT          _15_ percent

"MALCOLM C. POUNDS          _47_ percent
"FAIRFIELD HOME OIL

"CARL R. BAUER              _38_ percent
"* Note, the combined negligence of all responsible parties must equal 100 percent."

[4] The motion to set aside the verdict recited the following: "The defendants, H.N.S. Management Co., d/b/a 'CT Transit,' and 'John Doe' respectfully move the court to set aside the verdict in this matter insofar as there was no proof offered at the trial that the defendant, H.N.S. Management, Inc., owned the bus that was allegedly involved in the accident involving the plaintiff. A memorandum of law is attached and incorporated by reference.

The Defendant:
H.N.S. Management Company, Inc.,
d/b/a Connecticut Transit

By _____
John A. Blazi, Esq.
Law Offices of John A. Blazi
1138 West Main Street
Waterbury, CT 06708"

which allegedly contributed to the cause of the accident was in fact owned by the defendant H.N.S. Management. There was no evidence by which the jury could make that inference. Without such evidence, the plaintiff could not prove that the 'John Doe' operator was an agent of the defendant under the provisions of [General Statutes] § 52-183."[5] The plaintiff cross appealed from the judgment.

I

The plaintiff claims that the motion to set aside the verdict was based on factual and legal grounds different from those set forth in the motion by H.N.S. for a directed verdict that was denied after the close of the plaintiff's case-in-chief. He argues that our law is clear that a motion to set aside the verdict must be based on the same grounds as were alleged in the motion for a directed verdict.

The plaintiff claims that when H.N.S. filed its motion to set aside the verdict, it incorporated into that motion facts that were not presented at trial such that the motion to set aside the verdict was factually different from the earlier motion for a directed verdict. The plaintiff specifically claims that the "motion for a directed verdict was based upon the fact that the plaintiff failed to prove that the bus in question was owned by Connecticut Transit." The plaintiff contrasts that motion with the motion to set aside the verdict, and argues that H.N.S. "altered tactics and subsequently claimed that the plaintiff failed to prove that the bus in question was owned by . . . H.N.S. Management Co., Inc., which

---

[5] General Statutes § 52-183 provides: "In any civil action brought against the owner of a motor vehicle to recover damages for the negligent or reckless operation of the motor vehicle, the operator, if he is other than the owner of the motor vehicle, shall be presumed to be the agent and servant of the owner of the motor vehicle and operating it in the course of his employment. The defendant shall have the burden of rebutting the presumption."

[H.N.S.] argues is apparently a different entity than Connecticut Transit."

The plaintiff also argues that the fact that H.N.S. and Connecticut Transit "may be different entities was never raised by defendants' trial counsel prior to the motion for a directed verdict. . . ."[6] The plaintiff claims that had he been fully aware at the time H.N.S. made its motion for a directed verdict that H.N.S. claimed it did not own the bus involved in the accident, he might have altered his trial strategy and withdrawn the claim against H.N.S., doing business as Connecticut Transit, and proceeded against only the remaining defendants.

"The rules of practice establish a procedure pursuant to which a motion for a directed verdict, if denied, is considered renewed by the motion for judgment notwithstanding the verdict." *Salaman* v. *Waterbury*, 246 Conn. 298, 309, 717 A.2d 161 (1998); Practice Book § 16-37; see also 2 E. Stephenson, Connecticut Civil Procedure (2d Ed. 1970) § 203, p. 823. Practice Book § 16-37 "provides for a motion for judgment notwith-

---

[6] In the plaintiff's principal brief, he asserts that H.N.S. "improperly included facts that were not introduced at trial. [Its memorandum of law in support of its motion to set aside the verdict] indicates that 'Connecticut Transit' is allegedly a trade name used by more than one corporate entity. . . . This alleged fact was never introduced at trial . . . ."

During oral argument, counsel for Connecticut Transit was asked whether the plaintiff's assertion was correct. He admitted that there was no evidence before the jury that other companies in Connecticut used "Connecticut Transit" as a trade name. In its brief, H.N.S. argues that "H.N.S. Management Company, Inc., a corporate legal entity . . . is one of several management companies in Connecticut doing business as 'Connecticut Transit.'" In its memorandum of law in support of its motion to set aside the verdict, H.N.S. states that "'Connecticut Transit' is a trade name that is used by several bus companies operating transit systems in Connecticut and [that] H.N.S. Management Company does not have exclusive use of that trade name . . . ." H.N.S. also argued in the same memorandum that there was no evidence from which the jury could "reasonably infer that the particular bus involved in the accident was owned by H.N.S. Management *as opposed to other bus companies that use the same trade name.*" (Emphasis added.) There was no such evidence before the jury.

standing the verdict in accordance with [the party's] motion for a directed verdict." (Internal quotation marks omitted.) *Salaman* v. *Waterbury*, supra, 309; see also *Berry* v. *Loiseau*, 223 Conn. 786, 819, 614 A.2d 414 (1992); *State* v. *Avcollie*, 178 Conn. 450, 455, 423 A.2d 118 (1979), cert. denied, 444 U.S. 1015, 100 S. Ct. 667, 62 L. Ed. 2d 645 (1980). "The purpose of the motion for a directed verdict with respect to the motions to set aside and for judgment notwithstanding the verdict is to give notice to the trial court." *Salaman* v. *Waterbury*, supra, 309; see *State* v. *Avcollie*, supra, 455. "It has long been the rule that [a] motion for a directed verdict is a prerequisite to the filing of a motion to set aside the verdict. . . . [See Practice Book § 16-37] (a party who has moved for a directed verdict may move to have the verdict and any judgment rendered thereon set aside and have judgment rendered in accordance with his motion for a directed verdict . . . ) ." (Citations omitted; internal quotation marks omitted.) *Salaman* v. *Waterbury*, supra, 311 (*Katz, J.*, concurring).

We do not find the plaintiff's arguments on this issue persuasive. In this case, fairly viewed, the motion to set aside the verdict was sufficiently in accordance with the motion for a directed verdict. It is evident that the motion for a directed verdict alerted the court and the plaintiff that the claim was one of insufficiency of the evidence, i.e., that there was no evidence to prove that Connecticut Transit owned the bus involved in the accident that allegedly caused the plaintiff's injuries. The basis of both motions was that there was no evidence proving the ownership of the bus. That one motion referred to H.N.S. and the other referred to Connecticut Transit was not a change in substance. As we discuss in this opinion, H.N.S. and Connecticut Transit, in legal contemplation, are one and the same defendant. Moreover, the briefs of both parties, as well as their trial posture, recognized and fairly represented to the court

that the bus company was sued under the corporate name and style of a business name, i.e., "H.N.S. Management Company, Inc., doing business as Connecticut Transit."

"A corporation is a person although it is not a natural person." M. Ford, Connecticut Corporation Law & Practice (2d Ed. 2000) § 2.02, p. 2-10. It appears well settled that the use of a fictitious or assumed business name "does not create a separate legal entity . . . [and that] [t]he designation [d/b/a] . . . is merely descriptive of the person or corporation who does business under some other name." (Internal quotation marks omitted.) *Pinkerton's, Inc.* v. *Superior Court*, 49 Cal. App. 4th 1342, 1348, 57 Cal. Rptr. 2d 356 (1996), quoting *Providence Washington Ins. Co.* v. *Valley Forge Ins. Co.*, 42 Cal. App. 4th 1194, 1200, 50 Cal. Rptr. 2d 192 (1996); see *Duval* v. *Midwest Auto City, Inc.*, 425 F. Sup. 1381, 1387 (D. Neb. 1977), aff'd, 578 F.2d 721 (8th Cir. 1978); *Wood Mfg. Co.* v. *Schultz*, 613 F. Sup. 878, 884 n.7 (W.D. Ark. 1985); *Jaffe* v. *Nocera*, 493 A.2d 1003, 1008 (D.C. 1985); *Southern Ins. Co.* v. *Consumer Ins. Agency, Inc.* 442 F. Sup. 30, 31 (E.D. La. 1977); *Patterson* v. *V & M Auto Body*, 63 Ohio St. 3d 573, 575, 589 N.E.2d 1306 (1992); *Carlson* v. *Doekson Gross, Inc.*, 372 N.W.2d 902, 905 (N.D. 1985); see also *American Express Travel Related Services Co.* v. *Berlye*, 202 Ga. App. 358, 360, 414 S.E.2d 499 (1991), cert. denied, 202 Ga. 905 (1992) ("[t]he use of d/b/a or 'doing business as' to associate a tradename with the corporation using it does not create a legal entity separate from the corporation but is merely descriptive of the corporation").

H.N.S. moved for a directed verdict on the basis that the plaintiff had failed to prove that Connecticut Transit owned the bus. Although the court denied the motion, the plaintiff was effectively on notice that H.N.S. did not believe that he had met his burden of proving that element of his prima facie case. "The motion for

directed verdict adequately alerted the plaintiff and the trial court to the legal issue . . . upon which the trial court based its decision in setting aside the verdict."[7] *Salaman* v. *Waterbury*, supra, 246 Conn. 309.

We conclude, therefore, that the motion to set aside the verdict was sufficiently in accordance with the motion for a directed verdict so that the plaintiff's argument that the motions were based on different factual and legal grounds must be rejected.

## II

Next, we turn to the plaintiff's claim that the court improperly granted the motion to set aside the verdict because there was sufficient evidence from which the jury reasonably could infer that H.N.S. owned and operated the bus. The plaintiff claims that the court should have considered the law of agency and the doctrine of respondeat superior.

## A

Certain additional circumstances concerning the pleadings and the posture of counsel must be set out to put our analysis and discussion in context. In paragraph two of the first count of the second amended complaint, the plaintiff alleged that "[t]he defendants are . . . H.N.S. Management Company, Inc., d/b/a Connecticut Transit (hereinafter referred to as 'Connecticut Transit') and John Doe, address unknown." In its answer to that allegation, H.N.S. pleaded that it lacked "sufficient information upon which to form an opinion or belief,

---

[7] Plaintiff's counsel argued in his brief that he could have altered his trial strategy at that point, and although he may not have decided to withdraw the claim against H.N.S., doing business as Connecticut Transit, he may have at the very least elicited evidence to support the element of ownership in his cross-examination of the defendants' witnesses. See also *State* v. *Avcollie*, supra, 178 Conn. 454 (following defendant's motion for directed verdict, at close of state's case, both parties permitted to offer additional evidence).

and [left] the plaintiff to his burden of proof." In paragraph six of the same count, the plaintiff alleged that "[a]t that time and place [of the alleged accident], a bus, owned and/or operated by the defendant, Connecticut Transit, and driven by an unknown driver, John Doe, one of its agents or employees, was also traveling north on High Ridge Road . . . ." H.N.S. denied that allegation.

The record shows that the answer, including a special defense of comparative negligence, was interposed by "The Defendant: H.N.S. Management Company, Inc., d/b/a Connecticut Transit by John A. Blazi [its attorney]." When counsel for the plaintiff was questioned by this court whether the appearance filed in the first instance by the bus company was also filed in the same fashion, i.e., H.N.S. Management Company, Inc., doing business as Connecticut Transit, he indicated that he believed it was.[8]

Counsel for the bus company argued that there was no mention of H.N.S. before the jury, but only of Connecticut Transit. Therefore, he argued, there was no evidence of any link between H.N.S. and Connecticut Transit to permit the jury to find that H.N.S. owned the bus involved in the accident so as to impose liability on H.N.S.

It is sufficient at this point to note that the bus company was sued and defended this action under the name and style of "H.N.S. Management Company, Inc., d/b/a Connecticut Transit." It is clear from what we have said earlier that where a legal entity such as H.N.S. is sued as "doing business as Connecticut Transit" and defends in that posture, H.N.S. assumes a designation that, in legal contemplation, the bus company defendant is one

---

[8] Counsel for the defendant bus company indicated at oral argument that this was incorrect. The appearance for the bus company does not appear in the record.

entity, i.e., H.N.S., doing business as Connecticut Transit, and, as such, it may be the object of liability to the plaintiff if the plaintiff proves his case against it. See, e.g., *Pinkerton's, Inc.* v. *Superior Court,* supra, 49 Cal. App. 4th 1342, and other authority previously cited. In short, the viable legal defendant is not Connecticut Transit, but H.N.S. Management Company, Inc., doing business as Connecticut Transit.[9] That is the entity for which Blazi appeared, signed pleadings on behalf of and acted as counsel for throughout the trial.

In its opening remarks to the jury, the court stated that the defendants were Fairfield Home Oil Corporation, Malcolm C. Pounds and "H.N.S. Management Company, which does business as Connecticut Transit." That was not changed by the fact that when the court asked counsel at the outset of the proceedings to introduce themselves, Blazi identified himself as "attorney John Blazi for the defendant Connecticut Transit." That also was not changed by the fact that Blazi introduced himself to the jury panel by stating, "My name is John Blazi, and I represent Connecticut Transit." Moreover, during the trial, Blazi repeatedly referred to "Connecticut Transit" when he referred to H.N.S. Those repeated references reinforce the inference that H.N.S. was Connecticut Transit in that H.N.S. owned and operated the buses that reasonably could be identified as "Connecticut Transit" buses, including the one involved in the accident that allegedly caused the plaintiff's injuries.

On the basis of what we have stated, it is difficult to accept the claim by H.N.S. that it lacked "sufficient

---

[9] The introduction by counsel to the jury panel took place after the court told the jury panel that "[t]he plaintiff is Carl R. Bauer, and there are *three* defendants, Malcolm C. Pounds, Fairfield Home Oil Corporation *and H.N.S. Management Company, which does business as Connecticut Transit.*" (Emphasis added.) At that time, counsel for H.N.S. also informed the jury panel that he represented the defendant Doe, the bus driver, as well as the bus company.

information upon which to form an opinion or belief" in response to paragraph two of the first count in the plaintiff's second amended complaint, which alleged that one of the defendants is "H.N.S. Management Company, Inc., d/b/a Connecticut Transit (hereinafter referred to as 'Connecticut Transit')." Blazi entered an appearance on behalf of "H.N.S. Management Company, Inc., d/b/a Connecticut Transit." His "general appearance [was] at the very least prima facie evidence of the truth of its recitals, which necessarily embrace an intention to submit generally to the in personam jurisdiction of the court." *Beardsley* v. *Beardsley*, 144 Conn. 725, 729, 137 A.2d 752 (1957). Conduct of a party, of course, may also operate as a general appearance. Id., 730. By entering a general appearance and by his actions, Blazi can reasonably be found to have acknowledged that H.N.S., doing business as Connecticut Transit, was not only a defendant in the action, but that as such it submitted to the court's jurisdiction.

## B

With this background in mind, we examine the propriety of the court's action in setting aside the verdict because there was insufficient evidence to prove that H.N.S. owned the bus involved in the accident that allegedly caused the plaintiff's injuries. In setting aside the verdict, the court found that without evidence of proof of ownership, the plaintiff could not prove that the alleged bus driver, the defendant Doe, was an agent of H.N.S. under § 52-183.

The court "should not set aside a verdict where it is apparent that there was some evidence upon which the jury might reasonably reach their conclusion . . . ." (Internal quotation marks omitted.) *A-G Foods, Inc.* v. *Pepperidge Farm, Inc.*, 216 Conn. 200, 206, 579 A.2d 69 (1990). "In reviewing the court's action in rendering a judgment notwithstanding the verdict, we consider

the evidence in the light most favorable to the [plaintiff]." (Internal quotation marks omitted.) *Salaman* v. *Waterbury*, supra, 246 Conn. 304. We are aware that "[t]he decision to set aside a verdict involves the exercise of a broad discretion in the trial court which, in the absence of a clear abuse, will not be disturbed . . . ." *A-G Foods, Inc.* v. *Pepperidge Farm, Inc.*, supra, 206.

The jury could have reasonably found the following facts relevant to this appeal.[10] The plaintiff's vehicle and the bus were traveling north on High Ridge Road at about 8:15 a.m. on October 20, 1992. High Ridge Road is a two lane highway in each direction with a fifth turning lane in the middle. No parking was permitted on the right side of the highway. When the plaintiff first saw the bus, he recognized it to be a Connecticut Transit bus.[11] The bus was "loading and unloading" passengers in front of the Rippowam Magnet Middle School.

The plaintiff was in the right lane, traveling north, "a fair distance back," and the bus was blocking his lane. The plaintiff moved his vehicle into the left lane. As he closed the distance between his vehicle and the bus, the bus driver "turned his turn signal on and turned into [the plaintiff's] lane at the same time" in what the plaintiff testified was "a sudden and immediate movement." The plaintiff reacted. He downshifted and turned his car into the right lane to avoid hitting the back of the bus.

When the plaintiff cleared the bus, he realized that he was "looking" at an oil truck that was parked and blocking traffic in the right lane. The plaintiff slammed

---

[10] The jury reasonably could have found other facts, but we set out here only those that concern the basis of the court's decision to grant the motion to set aside the verdict.

[11] The plaintiff testified that this bus was "a Connecticut Transit green and blue city bus."

on his brakes. Fairfield Home Oil Corporation owned the oil truck, and Pounds, the driver, had parked it at the curb on the right side of the highway, facing north. He was making an oil delivery. Pounds was at the back of his oil truck and, as he was inserting a ticket into his meter, he heard a screeching sound. Pounds looked behind him and saw a car coming toward him at an angle. He jumped back off the highway onto a lawn and saw the plaintiff's car hit the oil truck. Pounds saw the bus continue its progress, proceeding north in the left lane. He recognized it as a "city bus."

A woman witnessed the accident. She was operating her vehicle three or four car lengths behind the plaintiff's vehicle. The woman testified that while she could not give the name of the bus involved, it was one of "whatever the city . . . buses [are] that run back and forth on High Ridge Road." She further testified that other buses like that stop at the Rippowam bus stop.

The plaintiff's attorney called as a witness a superintendent of Connecticut Transit, Joseph Stroman,[12] who testified that he had held that position in Stamford for nine years. The plaintiff's attorney asked Stroman, "[I]n your position with *the defendant*, are you familiar with the bus stops along High Ridge Road as they would have been in 1992?" (Emphasis added.) Stroman answered, "Yes," and testified that on October 20, 1992, buses from Connecticut Transit had a stop in front of the Rippowam school on High Ridge Road on the right side heading north. Stroman further testified about the bus schedule and testified that on October 20, 1992, between 8 a.m. and 8:30 a.m., buses would leave the Rippowam stop every twenty minutes.

Stroman testified in his capacity as a superintendent with Connecticut Transit.[13] Although there was no spe-

---

[12] Stroman testified under subpoena by the plaintiff.

[13] On direct examination by the plaintiff's counsel, Stroman testified in relevant part:

"Q. Just very briefly, what is your position with Connecticut Transit?

cific mention of H.N.S., doing business as Connecticut Transit, as the evidence was presented to the jury, Connecticut Transit was mentioned on numerous occasions by the court and counsel. The jury fairly and reasonably could have found as a fact, on the basis of common sense, fair inference and repetition, that the phrase "Connecticut Transit" was a convenient shorthand method of referring to the defendant H.N.S. Management Company, Inc., doing business as Connecticut Transit.

"The word 'owner' has no fixed meaning but must be interpreted in its context and according to the circumstances in which it is used." *Warren* v. *Borawski*, 130 Conn. 676, 679, 37 A.2d 364 (1944). In *Hope* v. *Cavallo*, 163 Conn. 576, 580–81, 316 A.2d 407 (1972), our Supreme Court stated that "[t]he term 'owner' is one of general application and includes one having an interest other than the full legal and beneficial title. . . . The word owner is one of flexible meaning, and it varies from an absolute proprietary interest to a mere possessory right. . . . It is not a technical term and, thus, is not confined to a person who has the absolute right in a chattel, but also applies to a person who has possession and control thereof." (Citations omitted.) See also *Gill* v. *Petrazzuoli Bros., Inc.*, 10 Conn. App. 22, 27, 521 A.2d 212 (1987).

In this case, as we have pointed out, "Connecticut Transit" was not only the shorthand method by which the court and counsel referred to the defendant H.N.S. Management Company, Inc., doing business as Connecticut Transit, but Connecticut Transit was not per se a legal entity.

"A. I'm a superintendent.
"Q. And how long have you had that position?
"A. About nine years.
"Q. Okay. And has it been always for Connecticut Transit?
"A. Always for Connecticut Transit."

The evidence previously set forth, particularly that of Stroman, was sufficient to permit the jury reasonably to infer that the bus involved in the accident that allegedly caused the plaintiff's injuries was a Connecticut Transit bus operating under the legal aegis of H.N.S., and that H.N.S. had control and possession of it so as to be its "owner" under the rationale of such cases as *Hope* v. *Cavallo*, supra, 163 Conn. 576. Our Supreme Court has stated "that a jury may make all inferences and conclusions which, in their judgment and discretion, may logically and reasonably be drawn from the facts in evidence. . . . The test is, not that the inference must unavoidably and unerringly point in one direction, but, rather, whether the rational mind could with reasonableness draw the inference. . . . If two rational minds could reasonably draw different inferences from facts in evidence, whether controverted or uncontroverted, the decision is for the jury." (Internal quotation marks omitted.) *Magnon* v. *Glickman*, 185 Conn. 234, 239, 440 A.2d 909 (1981); see also *Cagianello* v. *Hartford*, 135 Conn. 473, 476, 66 A.2d 83 (1949). Stating it somewhat differently but in substantially the same way, our Supreme Court has stated: "The test for determining the validity of the jury's verdict[14] is whether the evidence, fairly and impartially considered, would be likely to induce in the minds of six persons of ordinary intelligence, attentively considering it and using common-sense logic, a reasonable belief that it is more probable than not that the facts in issue are true." *Rapuano* v. *Oder*, 181 Conn. 515, 517, 436 A.2d 21 (1980).

[14] We note that the interrogatories submitted to and answered by the jury contained the following question underscoring the status of the defendant bus company:

"1. Were the defendants 'John Doe' and H.N.S. Management Co. (Connecticut Transit Co.) negligent in any of the ways alleged by the plaintiff in causing the plaintiff's accident?"

The bus company failed to raise any question about the form of that interrogatory, which the jury answered in the affirmative.

Having determined that the jury reasonably could have found that H.N.S. owned the bus, a presumption arose under § 52-183[15] that the defendant Doe was an agent of H.N.S. when the bus he was driving was involved in the accident that allegedly caused the plaintiff's injuries. That presumption applied, and the plaintiff benefited from it until such time as the jury found that it had been rebutted by H.N.S. See *Scalora* v. *Shaughnessy*, 151 Conn. 252, 257, 196 A.2d 763 (1963); *O'Dea* v. *Amodeo*, 118 Conn. 58, 65, 170 A. 486 (1934). Therefore, the plaintiff did not have to prove that the defendant Doe was an agent of H.N.S. because H.N.S. did not rebut the presumption. There was no evidence that put the presumption in question. At that point, the jury properly could go no further than to find that the defendant Doe was the agent of H.N.S., acting within the scope of his agency at the time of the accident.

For the foregoing reasons, we conclude that the court acted improperly in granting the motion by H.N.S. to set aside the verdict.

The judgment is reversed in part and the case is remanded with direction to render judgment on the verdict for the plaintiff as against the defendant H.N.S. Management Company, Inc., doing business as Connecticut Transit. In all other respects the judgment is affirmed.

In this opinion the other judges concurred.